UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

S.J.W.,                                      )
                                             )
          Plaintiff,                         )        Case No. 3:25-cv-00029-GFVT
                                             )
v.                                           )
                                             )        **MEMORANDUM OPINION**
FRANK BISIGNANO, *Commissioner of*           )        **&**
*Social Security*,                           )        **ORDER**
                                             )
          Defendant.                         )

*** *** *** ***

Plaintiff seeks judicial review of an administrative decision denying her claim for

Disability Insurance Benefits (DIB).  Plaintiff S.J.W. brings this action pursuant to 42 U.S.C. §

405(g), alleging error on the part of the administrative law judge who considered the matter.[1]

The Court, having reviewed the record and for the reasons set forth herein, will **DENY** S.J.W.'s

Motion for Summary Judgement [R. 6.] and **GRANT** the Commissioner's [R. 8.]

**I**

Plaintiff S.J.W. filed her application for social security benefits on December 10, 2022,

initially alleging an October 10, 2018, disability onset date.  [R. 5-2 at 18.]  However, she later

amended her alleged onset date to July 22, 2021.  *Id.*  Her claim was denied initially on February

21, 2023, and upon reconsideration on March 14, 2023.  *Id.*  S.J.W. then submitted a written

request for a hearing, and on September 6, 2023, ALJ Boyce Crocker conducted an online video

hearing.  *Id.*  ALJ Crocker issued his decision on May 16, 2024, denying S.J.W.'s application for

---

[1] The claimant's initials are used in lieu of her name to protect her sensitive medical information contained
throughout this Memorandum Opinion and Order.

benefits. *Id.* S.J.W. then requested review of ALJ Crocker's decision with the Appeals Council. *Id.* at 2. The Appeals Council denied S.J.W.'s request for review on May 1, 2025. *Id.* S.J.W. then filed a Complaint with this Court seeking judicial review under 42 U.S.C. § 405(g). [R. 1.] Both parties have now filed motions for summary judgment which are ripe for review. [R. 6; R. 8.]

## II

To evaluate a claim of disability for Supplemental Security Income disability benefits, the ALJ conducts a five-step analysis. *See* 20 C.F.R. § 416.920. If at any step the ALJ can find that the claimant is disabled or not disabled, the analysis stops. 20 C.F.R. § 404.1520(a)(4). First, if a claimant is performing substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). Second, if a claimant does not have a severe impairment or combination of impairments, she is not disabled. 20 C.F.R. § 404.1520(ii). Third, if a claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d).

Before moving on to the fourth step, the ALJ must use all the relevant evidence in the record to determine the claimant's residual functional capacity, which assesses her ability to perform certain physical and mental work activities on a sustained basis despite any impairment. *See* 20 C.F.R. §§ 404.1520(e), 404.1545. Under the fourth step, the ALJ uses a claimant's RFC to determine whether she is still able to do her past work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, she is not disabled. *Id.*

Finally, at step five, if the ALJ assesses a claimant's RFC in conjunction with her age, education, and work experience and finds that the claimant cannot adjust to perform other jobs available in significant numbers in the national economy, the claimant is disabled. 20 C.F.R. §§

2

404.1520(g), 404.1560(c). Through step four of the analysis, "the claimant bears the burden of proving the existence and severity of limitations caused by [her] impairments and the fact that [she] is precluded from performing [her] past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

A

ALJ Crocker completed the requisite five-step analysis to determine S.J.W.'s disability status. [R. 5-2 at 18-28.] He first determined that S.J.W. has not engaged in substantial gainful activity since July 22, 2021, which is the alleged onset point of the period in which she claims to be disabled. *Id.* at 20. Next, the ALJ found that S.J.W. suffered from the following severe impairments: (1) anxiety disorder, (2) bipolar disorder, (3) depressive disorder, and (4) attention deficit hyperactive disorder (ADHD). *Id.* The ALJ also noted that S.J.W. presented evidence and testimony of other impairments, such as degenerative disc disease of the lumbar spine, hyperlipidemia, and prior lumpectomy. *Id.* However, the ALJ found that there were no significant objective medical findings in the record to support that these impairments were severe. *Id.* at 20-21.

Then, at step three, the ALJ found that none of these impairments, nor any combination of them "meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. . ." *Id.* Before proceeding to step four, the ALJ fashioned S.J.W.'s RFC. *See* 20 C.F.R. § 404.1520(e). After considering the record, the ALJ determined that:

3

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitation: she can perform simple routine work tasks for extended periods of 2-hour segments. She can have occasional interactions with coworkers, supervisors and members of the public, and no strict production demands made of her in the workplace.

*Id.* at 22. Next, the ALJ proceeded to step four, concluding that S.J.W. is unable to perform any past relevant work. *Id.* at 26. In reaching this conclusion, the ALJ specifically addressed whether S.J.W. could perform work as a teacher's aide or a certified nurse assistant, concluding that she could not. *Id.* Thus, the ALJ concluded that S.J.W. is unable to perform past relevant work "as actually or generally performed." *Id.* at 27.

Proceeding finally to step five, the ALJ heard from a vocational expert and determined that, considering S.J.W.'s age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that S.J.W. can perform. *Id.* These jobs include: (1) garment sorter, with approximately 125,000 jobs in the national economy, (2) inspector (light), with approximately 200,000 jobs in the national economy, (3) folder, with approximately 90,000 jobs in the national economy, (4) stuffer, with approximately 50,000 jobs in the national economy, (5) inspector (sedentary), with approximately 75,000 jobs in the national economy, and (6) cuff folder, with approximately 50,000 jobs in the national economy. *Id.* at 27-28.

Consequently, the ALJ found that S.J.W. had not been under a disability, as defined in the Social Security Act, from July 22, 2021, through the date of his decision. *Id.* at 28. The Appeals Council declined to review the case on May 21, 2025. [R. 1.] S.J.W. now seeks judicial review in this Court.

**B**

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611,

4

614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319-20 (6th Cir. 1987). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The substantial evidence standard "presupposes that there is a zone of choice within which [administrative] decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, a reviewing court may not conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (citation omitted); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion. *See Ulman*, 693 F.3d at 714; *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

The Court "limit[s] [its] consideration to the points that [S.J.W.] appears to raise in her brief on appeal." *LaFollette v. Kijakazi*, 3:22-cv-32-REW, 2023 WL 7167177, at *10 (E.D. Ky. Sept. 18, 2023) (quoting *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006)). In the instant matter, S.J.W. brings two main objections to the ALJ's decision. First, S.J.W. contends that, at step three, the ALJ improperly concluded that none of her

5

impairments met or medically equaled the severity of a listed impairment.  [R. 6-1 at 8-10.]

Next, S.J.W. disputes the RFC that the ALJ determined for her.  *Id.* at 10-15.  The Court

addresses these contentions in turn.

**1**

At step three, the ALJ must determine whether the claimant's impairment or combination

of impairments is of a severity to meet or medically equal the criteria of an impairment listed in

20 C.F.R. Part 404, Subpart P, Appendix 1.  *See* 20 C.F.R. § 404.1520(d).  Here, the ALJ

considered listings 12.04 relating to depressive, bipolar, and related disorders, and listing 12.06

relating to anxiety and obsessive-compulsive disorders.  [R. 5-2 at 21.]  Those listings consist of

Paragraph A criteria, the medical findings that substantiate the mental disorder; Paragraph B

criteria, a set of impairment-related functional limitations that are incompatible with the ability to

work; and Paragraph C criteria, the documented medical history and marginal adjustment.  20

C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00.  For an impairment to meet or equal the criteria of these

listings, a plaintiff must meet either Paragraph A and B criteria, or Paragraph A and C criteria.

*Id.* at § 12.00(A)(2).

Here, the ALJ found that S.J.W. did not satisfy either Paragraph B or C criteria, which

precluded a finding of disability at step three.  [R. 5-1 at 21-22.]  S.J.W. only objects to the

ALJ's finding as to the Paragraph B criteria.  [*See* R. 6-1.]  To satisfy the Paragraph B criteria,

the plaintiff must demonstrate that the mental impairments result in one extreme limitation or

two marked limitations in the following areas of functioning: (1) understanding, remembering, or

applying information, (2) interacting with others, (3) concentrating, persisting, or maintaining

pace, and (4) adapting or managing oneself. 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.00(A)(2).

6

The ALJ found that S.J.W. had a mild limitation in interacting with others.  [R. 5-2 at 21.]  In reaching this conclusion, the ALJ noted that S.J.W. testified that she has trouble getting out of bed, has no energy, and she is afraid to drive, communicate, and be in public.  *Id.*  The ALJ also noted that S.J.W. testified that she has trouble getting along with neighbors, friends, family, and others.  *Id.*  However, the ALJ cited several treatment records which indicated that S.J.W. has normal mood and affect, as well as normal behavior.  *Id.*  The treatment records cited by the ALJ include doctor's office visits for a sore throat, a neck injury, abdominal pain, and oncology follow-up appointments.  *Id.*  From these records, the ALJ concluded that S.J.W. experiences a mild limitation in interacting with others.  *Id.*

S.J.W. objects to this finding because the treatment records cited by the ALJ were records from examinations related to physical complaints, rather than examinations relating to her mental state.  [R. 6-1 at 8.]  Additionally, S.J.W. notes that her doctor is known to her and the doctor's office is a structured setting, so her behavior in these settings is not a valid assessment of her ability to interact in an unfamiliar setting.  *Id.*  The Commissioner argues that S.J.W.'s mood at her physical examinations is still probative of her mental functioning, and the ALJ reasonably concluded that S.J.W. would have displayed some limitations in interacting with others in this setting, even if the examinations were unrelated to her mental condition.  [R. 8 at 6.]  Further, the Commissioner notes that the record does not contain any mental-status examinations between the alleged disability onset date and the last insured date, so the records cited by the ALJ were the most probative evidence of S.J.W.'s mental limitations during this time frame.  *Id.*

Next, the ALJ found that S.J.W. has a moderate limitation with regard to concentrating, persisting, or maintaining pace.  [R. 5-2 at 21.]  In reaching this conclusion, the ALJ noted that S.J.W. testified that she has difficulty with attention and concentration, can only pay attention for

five to ten minutes, and does not finish tasks that she starts. *Id.* Additionally, S.J.W.'s husband reported that S.J.W. often becomes agitated when given spoken instructions, but she does not attempt to follow written instructions and must have them read to her. *Id.* at 21-21. However, the ALJ considered a treatment record from a December 2022 appointment that noted S.J.W.'s attention, concentration, and cognition were normal, and then concluded that S.J.W. only had a moderate limitation with regard to concentrating, persisting, or maintaining pace. *Id.* at 22.

S.J.W. objects to this finding, arguing that the ALJ did not cite evidence to contradict her statements that she must have instructions read to her and does not finish tasks that she begins. [R. 6-1 at 9.] S.J.W. also contends that the ALJ should have considered other portions of the December 2022 treatment record which noted that S.J.W. often cannot complete tasks due to irritability and anxiety. *Id.* The Commissioner, however, contends that the ALJ did discuss the treatment record and found that S.J.W.'s subjective statements were not entirely consistent with the evidence as a whole. [R. 8 at 7.] Additionally, the Commissioner submits that, as the ALJ noted, S.J.W.'s own providers consistently documented that she had normal cognition and attention, including at the December 2022 appointment. *Id.*

In resolving S.J.W.'s contentions, the Court first notes that the Sixth Circuit has emphasized an ALJ's decision is to be read as whole, and the ALJ is not required to restate his analysis throughout. *Norris v. Comm's of Soc. Sec.*, 461 F. App'x 433, 440 (6th Cir. 2012) ("So long as the ALJ's decision adequately explains and justifies its determination as a whole, it satisfies the necessary requirements to survive this court's review."); *see also Rice v. Barnhart*, 384 F.3d 363, 370 n. 5 (7th Cir. 2004) ("[I]t is proper to read the ALJ's decision as a whole. . .it would be a needless formality to have the ALJ repeat substantially similar factual analyses in different parts of the decision."). Further, the Sixth Circuit has held that even an ALJ's complete

failure to assign a degree of limitation to the four functional areas does not automatically warrant reversal because "[t]his kind of evidence—evidence regarding the claimant's activities of daily living, social functioning, concentration, persistence, or pace, and episodes of decompensation—is objective, concrete factual and medical evidence that will be apparent in the record, at least in some cases." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 657 (6th Cir. 2009).

In evaluating whether a claimant's impairments meet or medically equal a listed impairment, the regulations only require that the ALJ evaluate the evidence, compare it to the specified listing, and state their conclusion in such a way that facilitates meaningful judicial review. *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 415-16 (6th Cir. 2011). Here, the ALJ has done so, and the decision is supported by substantial evidence. The ALJ first noted which listings he evaluated, listings 12.04 and 12.06. [R. 5-2 at 21.] The ALJ then summarized the evidence that he considered with respect to each functional area and stated his conclusion. *Id.* Although the ALJ only cited records relating to physical examinations when discussing S.J.W.'s ability to interact with others, elsewhere in the opinion, the ALJ discussed examinations related to S.J.W.'s mental conditions, which all led him to the conclusion that S.J.W. only experiences mild limitations in interacting with others and moderate limitations in concentrating, persisting, or maintaining pace.

The record does not present an instance where the ALJ failed to discuss the evidence, or even identify the relevant listing or listings considered. *See e.g. M.G. v. Comm'r of Soc. Sec.*, 861 F.Supp.2d 846, 858 (E.D. Mich. 2012) (remanding where the ALJ did not cite, discuss, or resolve any conflicts in the evidence in concluding that the plaintiff's mental impairments did not meet or medically equal a listing); *Miller v. Comm'r of Soc. Sec.*, 181 F.Supp.2d 816, 820 (S.D. Ohio 2001) (remanding where the ALJ simply noted that the impairments "do not meet or equal

9

any section of the Listing of Impairments" without citing any listing or discussing whether the evidence demonstrated that the plaintiff satisfied the elements of that listing).  The ALJ in the instant case made specific findings, with citations to the record, regarding whether S.J.W.'s limitations met or medically equaled a listed impairment.

The ALJ is not required to "spell[] out every consideration that went into the step three determination." *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006) ("The language of 20 C.F.R. § 404.1526 does not state that the ALJ must articulate, at length, the analysis of the medical equivalency issue.").  So long as the ALJ reviews all of the evidence of impairments to determine when the sum of the impairments is medically equivalent to a listed impairment, the ALJ has complied with the regulations.  *Id.*  S.J.W.'s step three challenge essentially asks this Court to reweigh the evidence and come to a different conclusion than that of the ALJ. However, the Court finds that the ALJ sufficiently evaluated the evidence of S.J.W.'s impairments, and the findings are supported by substantial evidence.  *Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1986) ("[T]he ALJ's findings of fact should not be disturbed unless we are persuaded that his findings are legally insufficient.").  Thus, the ALJ did not err at step three.

**2**

S.J.W.'s final argument relates to the ALJ's finding as to S.J.W.'s residual functional capacity.  Although a claimant's impairments will certainly inform the RFC analysis, the Sixth Circuit has explained "the RFC is meant to describe the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from[.]" *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002).  In the present case, the ALJ found that S.J.W. had an RFC to perform a full range of work at all exertional levels, but limited the RFC to performing simple, routine work tasks for two-hour periods, among other limitations. [R. 5-2 at 22.]

10

S.J.W. objects to the ALJ's finding that S.J.W. could perform sustained work, claiming that the ALJ did not base his decision on the record as a whole. [R. 6-1 at 10.] S.J.W. specifically notes that at the hearing in this matter, the vocational expert testified that a worker being off task for more than six percent of the workday would result in job termination. *Id.* at 11. Based on this testimony, S.J.W. contends that the ALJ did not explain how the limitations related to S.J.W.'s obsessive compulsive disorder impairments would not result in her being off-task for less than six-percent of the workday. *Id.* at 13. S.J.W. also argues that the ALJ's decision to partially discredit the opinions of Dr. El-Mallakh and Dr. Bonomo is unsupported by substantial evidence, and in violation of the regulatory directives of 20 C.F.R. § 404.1520 which requires the ALJ to consider supportability and consistency of medical opinions. *Id.*

Pursuant to 20 C.F.R. § 416.920c, an ALJ must consider all medical opinions contained in the record. There are several factors an ALJ must consider when evaluating medical opinions: "(1) supportability; (2) consistency; (3) relationship with claimant; (4) specialization; (5) and 'other factors that tend to support or contradict a medical opinion or prior administrative medical findings.'" *Gorman v. Comm'r of Soc. Sec.*, 2022 WL 2284818, at *4 (E.D. Ky. June 23, 2022) (quoting *Rodriguez v. Comm'r of Soc. Sec.*, 2022 WL 807443, at *5 (M.D. Fla. Mar. 17, 2022). The regulation provides that while all factors are to be considered, the most important considerations are the supportability and consistency of the medical opinion. 20 C.F.R. § 416.920c(b)(2); *see Stemple v. Kijakazi*, 2021 WL 4060411, at *9 (N.D. Ohio Sept. 7, 2021).

Often, once the ALJ has examined the totality of the evidence in the record, contradictions and inconsistencies become apparent. In such circumstances, it falls to the ALJ to "[examine] conflicting evidence, [weigh] its probative value, and [reach] a conclusion." *T.B. v. Bisignano*, 2025 WL 3657202, at *4 (E.D. Ky. Dec. 17, 2025); *see also Sallaz v. Comm'r of Soc.*

*Sec.*, 2024 WL 2955645, at *7 (6th Cir. June 12, 2024) ("weighing conflicting evidence [is] properly within the ALJ's role"); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) ("[d]iscounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence").

In the present case, the ALJ found the opinions of Dr. Mallahk and Dr. Bonomo somewhat persuasive. [R. 5-2 at 26.] Dr. Mallahk evaluated S.J.W. on May 4, 2023, and rendered several opinions: (1) that S.J.W. would be absent more than four days per month from work; (2) that she is limited but satisfactory in traveling to an unfamiliar place and using public transportation; (3) that she has no limitations in interacting appropriately with the general public, including maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness; (4) that she has severe obsessive features which prevent her from completing easy tasks especially under time expectations; and (5) that she is unable to complete a normal workday and perform at a consistent pace without an unreasonable number and length of rest periods. *Id.*

Beginning with supportability, the ALJ concluded that Dr. Mallahk's findings were supported by his examination notes which provided that S.J.W. exhibited an anxious mood, but was otherwise polite and cooperative, and exhibited normal memory, attention, insight, and judgment. *Id.* As to consistency, the ALJ found that the opinion of Dr. Mallahk was not entirely harmonious with subsequent records. *Id.* Specifically, the ALJ cited a treatment record from Justin Doub, a licensed clinical social worker, in which Mr. Doub opined that S.J.W. exhibited normal attention, thought process, cognition, insight, judgment, and memory, as well as appropriate appearance. *Id.* Thus, the ALJ found that Dr. Mallahk's finding that S.J.W. is unable to meet competitive standards to complete a normal workday and perform at a consistent

12

pace without an unreasonable number and length of rest periods was not consistent with the record as whole. *Id.*

Turning next to Dr. Bonomo's findings, Dr. Bonomo examined S.J.W. on July 27, 2023 and rendered the following opinions: (1) that S.J.W. would miss more than four days a month of work; (2) that she is seriously limited in her ability to travel in unfamiliar places and use public transportation; (3) that she is unable to meet competitive standards for two-hour segments, complete a normal workday, and perform at a consistent pace without an unreasonable number and length of rest periods; and (4) that she has no useful ability to function or work without special supervision. *Id.* The ALJ similarly found that Dr. Bonomo's opinions were supported by his examination notes, as he noted that S.J.W. was struggling with irritability and hypervigilance, as well as reduced sleep. *Id.* However, the ALJ again found that Dr. Bonomo's opinion was not entirely consistent with the totality of the record, and specifically Mr. Doub's subsequent examination of S.J.W. *Id.*

Even viewing the reports of Dr. Mallahk and Dr. Bonomo in the light most favorable to S.J.W., the Court cannot find that the ALJ erred in finding their opinions only somewhat persuasive. This is precisely the role of the ALJ when faced with conflicting evidence. The Court understands that S.J.W. wishes that the ALJ had ascribed greater persuasiveness to certain portions of Dr. Mallahk's and Dr. Bonomo's opinion, and that doing so might have resulted in a different outcome for her application. Yet, Congress has determined that the difficult, fact-intensive process of resolving discrepancies in the record lies almost exclusively with the ALJ. The Court is, therefore, unable to re-weigh the evidence, or provide any other form of judicial relief, so long as the ALJ's findings were supported by substantial evidence. To do otherwise would squarely exceed the scope of judicial review.

13

Rather, the Court concludes that in making his persuasiveness finding as to the opinions of Dr. Mallahk and Dr. Bonomo, the ALJ engaged in a thorough analysis of the opinions' supportability and consistency, as required by the regulation. The ALJ reasonably considered the evidence before him in this case and fairly disregarded portions of the opinion evidence for well-articulated and justifiable reasons. Based on the record, his ultimate decision to find that S.J.W. could perform work in a work environment free of fast-paced production requirements and involving simple, routine tasks was supported by substantial evidence. Likewise, his decision that S.J.W. could tolerate routine work tasks for two-hour periods and occasional interactions with coworkers, supervisors, and members of the public, was also supported by substantial evidence.

## III

Thus, after reviewing the record, the Court finds that substantial evidence supports the ALJ's decision finding that S.J.W. is not disabled, as defined by the Social Security Act. Even if the evidence could also support another conclusion, the ALJ's decision must stand because the evidence reasonably supports his conclusion. *See Her*, 203 F.3d at 389-90; *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Plaintiff S.J.W.'s Motion for Summary Judgment **[R. 6]** is **DENIED**;

2. The Commissioner's Motion for Summary Judgment **[R. 8]** is **GRANTED**; and

3. **JUDGMENT** in favor of the Commissioner will be entered contemporaneously herewith.

14

This the 6th day of July, 2026.

Gregory F. Van Tatenhove
United States District Judge